**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**JOHN W. KARCZ**

                                    **Plaintiff**

              **-v-**                                              **20-CV-1045V(Sr)**

**THE CITY OF NORTH TONAWANDA,**
**et. al.,**

                                    **Defendants.**

_____


                    **REPORT, RECOMMENDATION AND ORDER**

              This case was referred to the undersigned by the Hon. Lawrence J.

Vilardo, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.  Dkt. #9.


              On August 7, 2020, plaintiff, proceeding _pro se_, commenced this action[1]

pursuant to 42 U.S.C. § 1983, alleging that law enforcement officers with the City of

North Tonawanda Police Department[2] and employees of the Erie County District

---

[1] Plaintiff has two additional actions currently pending against the City of North Tonawanda and, _inter alia_, its municipal employees: 16-CV-628 and 20-CV-9 and plaintiff's wife has also commenced 16-CV-693 against Niagara County and various police officers for the City of North Tonawanda Police Department. 16-CV-693.

[2] In New York, a police department is an administrative arm of the municipal corporation and cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity. _Loria v. Town of Irondequoit_, 775 F.Supp.599, 606 (W.D.N.Y. 1990). In as much as plaintiff's amended complaint recognizes this distinction and proceeds against the City of North Tonawanda, it is recommended that the Clerk's Office terminate the City of North Tonawanda Police Department as a defendant in this action. Moreover, because an official capacity suit against a municipal official is properly a suit against

Attorney's Office[3] violated his civil rights and subjected him to common law torts as a result of an ongoing dispute with his neighbor, Lawrence Kuebler, a Detective with the City of North Tonawanda Police Department ("Detective Kuebler"). After retaining counsel, plaintiff filed an amended complaint asserting the following causes of action:[4]

    (1)   false arrest pursuant to 42 U.S.C. § 1983;

    (2)   false imprisonment pursuant to 42 U.S.C. § 1983;

    (3)   malicious prosecution pursuant to 42 U.S.C. § 1983;

    (4)   failure to intervene and protect pursuant to 42 U.S.C. § 1983;

    (5)   excessive force pursuant to 42 U.S.C. § 1983;

    (6)   deliberate indifference to serious medical needs
           pursuant to 42 U.S.C. § 1983;

    (7)   First Amendment Retaliation pursuant to 42 U.S.C. § 1983;

    (8)   Denial of Due Process pursuant to 42 U.S.C. § 1983;

    (9)   Conspiracy to Violate Constitutional Rights
           pursuant to 42 U.S.C. § 1983;

    (10) Municipal Liability Claim against the City;

    (11) common law intentional infliction of emotional distress;

---

the official's office and is, therefore, duplicative of a suit against the municipality itself, it is recommended that all claims against the individual defendants in their official capacities be dismissed as duplicative of plaintiff's claims against the City of North Tonawanda. *See Reinhardt v. City of Buffalo*, 21-CV-206,  2021 WL 2155771, at *5 (W.D.N.Y. May 27, 2021).

    [3] The County of Ere, Erie County District Attorney's Office, Erie County District Attorney John J. Flynn and Erie County Assistant District Attorney Brian P. McNamara ("ADA McNamara"), were voluntarily dismissed from this action by Stipulation entered January 27, 2021 and SO ORDERED on January 28, 2921. Dkt. ##37-38.

    [4] Although plaintiff's amended complaint combines common law claims with federal constitutional claims in several causes of action, the Court lists each claim separately here for clarity.

(12) common law negligent infliction of emotional distress;

(13) common law negligence;

(14) common law negligent hiring, supervision, retention and training;

(15) common law false arrest;

(16) common law false imprisonment; and

(17) common law assault and battery

Dkt. #33. Plaintiff seeks, *inter alia*, compensatory and punitive damages. Dkt. #33, p.43.

Currently before the Court is a motion to dismiss brought by Lt. Iwanicki, Detective Kuebler, Police Officer ("PO") Benjamin, PO Bolslover, PO Burkhart, PO Krantz,, PO Mamot, PO Swick, the City of North Tonawanda Police Department, and the City of North Tonawanda (Dkt. #40), and a motion to strike by plaintiff. Dkt. #42. For the following reasons, both motions are granted in part.

## FACTUAL BACKGROUND

Plaintiff's amended complaint alleges that plaintiff complained that his next-door neighbor, Detective Kuebler, allowed his dogs to trespass on plaintiff's property, causing Detective Kuebler to be charged with a violation of the City of North Tonawanda Codified Ordinance Chapter 33, § 33-2 on or about January 24, 2017. Dkt. #33, ¶¶ 26-27.

Plaintiff alleges that Detective Kuebler subsequently conspired with PO Krantz to obtain a warrant for plaintiff's arrest, claiming that plaintiff called Detective

Kuebler a "pussy" while plaintiff and Detective Kuebler were in their respective yards. Dkt. #33, ¶ 29. Plaintiff was falsely arrested on January 26, 2017 and charged with harassing Detective Kuebler, resulting in the issuance of a temporary order of protection for Detective Kuebler on January 27, 2017. Dkt. #33, ¶¶ 28-33. Plaintiff alleges that the charge of harassment, second degree, was dismissed on November 14, 2017.[5] Dkt. #33, ¶ 36.

On May 12, 2018, plaintiff alleges that Detective Kuebler "angrily rushed towards" plaintiff "screaming and waving a broomstick at him" while plaintiff was standing in his driveway, speaking with his wife. Dkt. #33, ¶ 37. About an hour later, plaintiff alleges that Detective Kuebler[6] conspired with PO Benjamin,[7] PO Mamot, PO Swick, PO Burkhart and Lt. Iwanicki to have plaintiff arrested on a charge of criminal

---

[5] A transcript of proceedings before the Honorable Robert P. Merino, City Court Judge, Niagara Falls City Court, indicates that plaintiff, represented by counsel, admitted to a violation of probation for failure to report, agreed to an adjournment in contemplation of dismissal on the charge of harassment, and consented to a one year order of protection. Dkt. #28-7, pp.3-4. Plaintiff explained to Judge Merino that Detective Kuebler's "dogs entered my yard a second time" and he "lost [his] temper, and it's regrettable." Dkt. #28-7, p.11. Judge Merino admonished plaintiff to stay away from Detective Kuebler and refrain from assaulting, harassing, menacing or intimidating him. Dkt. #28-7, p.10.

[6] Detective Kuebler signed a supporting deposition on May 12, 2018, stating that he "was outside doing yard work. I heard a growling noise and looked up. [Plaintiff] was growling at me and lunged towards me like he was going to run at me. I stood up and he stopped. He called me a pussy and something else that I couldn't make out. I said "What did you say," "Excuse Me" and he said "pussy Queen" and laughed. There is an order of protection for him to stay away from me and my home. He is also not supposed to harass, intimidate, or menace me." Dkt. #8-2.

[7] PO Burkhart declares that before he arrested plaintiff on May 12, 2018, "the Police Department performed an independent search of the eJusticeNY integrated justice portal" and confirmed that "there was an active order of protection that prohibited Plaintiff from assaulting, threatening, abusing, harassing, following, interfering, stalking or having thrid-party communications with" Detective Kuebler. Dkt. #8-1, ¶ 8.

contempt, fist degree, for violating the order of protection by stomping his foot[8] at

Detective Kuebler and calling him a "pussy" as plaintiff and Detective Kuebler were in

their respective yards.[9] Dkt. #33, ¶¶ 38-41.

Plaintiff alleges that PO Burkhart assaulted plaintiff "by wrenching his

surgically repaired right arm behind his back," causing psychological and physical injury

in addition to emotional distress. Dkt. #33, ¶ 42. Plaintiff also alleges that PO Swick and

PO Burkhart drove the patrol car in such a manner as to wrench his right shoulder, arm

and back, "causing bruising, as well as twisting his previously injured left foot and

ankle." Dkt. #33, ¶ 45. Plaintiff alleges that he suffered psychological and physical

injury, as well as emotional distress, from defendants' twisting and shoving him into a

filthy cell without running water, without his shoes, and failing to provide medical care

for his injuries during his eighteen hour detention. Dkt. #33, ¶¶ 46-48.

---

[8] Plaintiff affirms that he was "stomping on a bee while I was standing in my driveway, more than 60 feet away from" Detective Kuebler. Dkt. #42-1, ¶ 3. Plaintiff denies running towards Detective Kuebler and affirms that after plaintiff stomped on the bee, Detective Kuebler approached and confronted plaintiff, saying: "What did you say? Excuse me?" Dkt. #42-1, ¶¶ 4-5.

[9] The North Tonawanda Police Field Case Report from reporting PO Burkhart and reviewing officer Lt. Iwanicki, states that on May 12, 2018, PO Benjamin, PO Mamot, PO Swick and PO Burkhart were dispatched to Detective Kuebler's residence for a violation of a court order. Upon arrival, Detective Kuebler "stated that he is the protected party in a full stay away order of protection out of Niagara Falls City court (2017-754), signed by the Honorable Robert P. Merino." Dkt. #28-9. Kuebler said he was outside doing yard work in his front yard when he heard a growling noise, looked up and saw plaintiff growling and taking an aggressive stance towards him. Dkt. #28-9. Plaintiff lunged towards Detective Kuebler like he was going to attack him, called him a "pussy," and "pussy queen," and laughed. Detective Kuebler stated that when plaintiff lunged at him, he feared physical injury. Dkt. #28-9. The Field Case Report indicates that officers spoke to plaintiff about the incident on plaintiff's front lawn, while plaintiff's wife filmed their interaction and yelled at Detective Kuebler as he was sitting on his front porch. Dkt. #28-9. As plaintiff was placed under arrest, he turned toward Detective Kuebler and yelled, "faggot." Dkt. #28-9.

Plaintiff was arraigned on May 13, 2018 on a charge of criminal contempt, first degree[10] for lunging at Detective Kuebler as if plaintiff was going to run at him and forced to post bail. Dkt. #33, ¶ 51. He was ordered to appear for a felony hearing on May 17, 2018. Dkt. #33, ¶ 57.

Plaintiff appeared for a felony hearing on May 17, 2018, but was refused access to the Court by PO Krantz; the felony hearing was not held. Dkt. #33, ¶¶ 57-64. Plaintiff alleges that the charge of criminal contempt, first degree, was terminated in his favor on January 29, 2019.[11] Dkt. #33, ¶ 71.

On February 4, 2019, plaintiff alleges that PO Krantz "began a vindictive and patently malicious prosecution campaign" against plaintiff, presenting a complaint[12] that "was rejected as deficient" by the North Tonawanda City Court and then presented to the Niagara County Court with "several different and intentionally mystifying CR

---

[10] The North Tonawanda Police Field Case Report indicates that plaintiff was charged under Docket #CR 2018-8149 with criminal contempt, first degree - violation of order of protection - physical meance - in violation of New York Penal Law § 215.51 and menacing, third degree, in violation of New York Penal Law § 120.15. Dkt. #28-9.

[11] ADA McNamara submitted an affidavit in support of his motion to dismiss affirming that he was assigned to plaintiff's criminal matter in Niagara County - Docket #CR-2449-18 - on October 10, 2018 after the recusal of the Niagara County District Attorney's Office. Dkt. #28, ¶ 16. ADA McNamara affirms that he reviewed the information regarding plaintiff's arrest on May 12, 2018 and reduced the charge to criminal contempt, second degree, as set forth in an Information/Complaint dated February 4, 2019. Dkt. #28, ¶ 19.

[12] An Information/Complaint signed by PO Benjamin, PO Mamot, PO Swick, and PO Burkhart on February 4, 2019 - Docket #CR 2019-2023 - alleges that plaintiff violated Order of Protection 2017-754 issued by the Honorable Robert P. Merino by intentionally placing the victim in reasonable fear of physical injury by lunging at the victim as if he was going to run at him and cause physical injury, charging plaintiff with criminal contempt, second degree in the City Court, North Tonawanda. Dkt. #28-10.

numbers and vindictively had charges filed in Lockport City Court once more over the same events dismissed on January 29, 2019."[13] Dkt. #33, ¶¶ 72-75. The charges were dismissed by the Erie County District Attorney once he was notified that plaintiff had hired an attorney. Dkt. #33, ¶ 76. As he was dismissing the charge on May 7, 2019, plaintiff alleges that the Erie County District Attorney "admitted that no one on the prosecution team had ever possessed a copy of the alleged temporary order of protection Plaintiff had supposedly violated and could not produce one for the court."[14] Dkt. #33, ¶¶ 76 & 79.

,

## DISCUSSION AND ANALYSIS

### Motion to Dismiss Standard

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[13] ADA McNamara affirms that the North Tonawanda City Court recused itself from the criminal prosecution because the subject of the order of protection, Detective Kuebler, was a North Tonawanda Police Officer. Dkt. #28, ¶ 19. The matter was assigned to Lockport City Court. Dkt. #28, ¶ 25.

[14] ADA McNamara affirms that the charge of criminal contempt, second degree, was dismissed in open court on May 6, 2019 because he was unable to locate a certified copy of the Order of Protection. Dkt. #28, ¶ ¶ 19-24. Because the charge was dismissed, court records for the criminal proceeding were sealed in accordance with New York Criminal Procedure Law § 160.50. Dkt. #28, ¶ 25

alleged." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S.at 679. While the factual allegations need not be detailed, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### Consideration of Extrinsic Evidence

Plaintiff argues that defendants improperly present information outside of the pleadings in support of their motion. Dkt. #42-4, pp.3-6. Specifically, plaintiff moves to strike the declaration from PO Burkhart (Dkt. #8-1); the affidavit of ADA McNamara (Dkt #28); the certified transcript of proceedings from Niagara Falls City Court on November 14, 2017 (Dkt. #28-7); the uncertified order of protection on behalf of P.O. Keubler against plaintiff (Dkt. #28-8); Detective Kuebler's supporting depositions (Dkt. #8-2[15] & Dkt. #28-9[16]); and body camera footage of plaintiff's arrest on May 12, 2018 from P.O. Burkhart.[17] Dkt. #8-3.  Alternatively, plaintiff argues that if the Court considers

---

[15] Dkt. #8-2 is the Supporting Deposition signed by Detective Kuebler and witnessed by PO Mamot on May 12, 2018. *See* n.5, *supra*.

[16] Dkt. #28-9 is the North Tonawanda Police Field Case Report from PO Burkhart which was reviewed by Lt. Iwanicki. *See* n.8 & 9, *supra*.

[17] PO Burkart declares that the body camera footage captures plaintiff acknowledging that there is an active order of protection against him and arguing that the order of protection is "false." Dkt. #8-1, ¶ 9.  PO Burkhart further declares that the body camera footage captures

these materials, he should be permitted to submit his own affidavit and extrinsic materials to demonstrate that dismissal is inappropriate. Dkt. #42-4, p.6.

Defendants respond that the Court can rely upon the certified transcript of court proceedings referenced in plaintiff's complaint to refute plaintiff's allegation that the November 14, 2017 charges resolved in his favor. Dkt. #46, pp.5-6. As to the order of protection, defendants respond that it is being supplied to establish the fact of its existence in response to allegations in plaintiff's complaint. Dkt. #46, p.7. Similarly, defendants argue that it is permissible to consider the supporting deposition which provided probable cause for plaintiff's arrest given that plaintiff is challenging the validity of that arrest. Dkt.#46, p.7. Defendants also argue that plaintiff has failed to put forth any basis to exclude documentary evidence of plaintiff's arrest on May 12, 2018. Dkt. #46, p.7.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document

---

plaintiff using the word "faggot" to describe Detective Kuebler as he was being placed in the patrol car. Dkt. #8-1, ¶ 11. The Court has not reviewed the body camera footage.

"even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Courts routinely take judicial notice of transcripts of related judicial proceedings, including criminal proceedings. *Coggins v. County of Nassau,* 07-CV-3624, 2008 WL 2522501, at *7 (E.D.N.Y. June 20, 2008), aff'd 362 Fed App'x. Courts may also take judicial notice of certificates of disposition, criminal complaints and other charging instruments, and arrest reports, not for the truth of their contents, but to establish their existence and legal effect. *Reid v. City of N.Y.,* 2022 WL 2967359, at *7 (S.D.N.Y. July 27, 2022); *Delgado v. City of N.Y.*, 19 Civ. 6320, 2021 WL 2473817, at *2 (S.D.N.Y. June 17, 2021). Judicial notice may also be taken of documents filed in other cases and other courts. *Belsito v. County of Erie,* 19-CV-215, 2019 WL 6292143, at *3 (W.D.N.Y. Nov. 25, 2019). Orders of protection are also matters of public record of which a court may take judicial notice. *Youngblood v. City of Mount Vernon*, 14 Cv.10288, 2015 WL 13948706, at *1 (S.D.N.Y. May 5, 2015), *citing Daniels v. City of N.Y.*, 03cv809, 2004 WL 1161231, at *2 (S.D.N.Y. May 24, 2004). Accordingly, it is recommended that plaintiff's motion to strike be denied with respect to documents that are integral to the complaint and/or the proper subject of judicial notice as specifically noted in the Court's analysis.

**Common Law Claims**

Statute of Limitations

Defendants argue that plaintiff's common law claims are barred by the statute of limitations. Dkt. #40-1, pp.12-13.

Plaintiff responds that  defendants' motion to dismiss his common law claims should be denied because his complaint was filed within one year and ninety days of the termination of the criminal proceeding stemming from the May 12, 2018 incident. Dkt. #42-4, p.9

Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading.  *Walters v. Industrial & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011).

New York's Civil Practice Law and Rules provides a one-year statute of limitations for intentional torts such as assault, battery, false imprisonment, malicious prosecution and intentional infliction of emotional distress. N.Y.C.P.L.R. § 215(3). However, New York General Municipal Law § 50-i provides, in relevant part, that

> No action . . . shall be prosecuted or maintained against a
> city . . . for personal injury . . . alleged to have been
> sustained by reason of the negligence or wrongful act of
> such city . . . or of any officer, agent or employee thereof . . .
> unless . . . the action or special proceeding shall be

commenced within one year and ninety days after the
happening of the event upon which the claim is based.

New York General Municipal Law § 50-i further provides that this section shall apply

"notwithstanding any inconsistent provisions of law, general, special or local, or any

limitation contained in the provisions of any city charter." Personal injury is defined by

New York General Construction Law § 37-a to include "libel, slander and malicious

prosecution also an assault, battery, false imprisonment, or other actionable injury to

the person either of the plaintiff, or of another."


While there have been some cases to the contrary, the majority of courts

to consider the issue have determined that the longer statute of limitations applies to

intentional torts against municipal employees, including police officers, unless the

employee's actions were clearly outside of the scope of employment. *See Fonvil v.*

*County of Rockland,* 2018 WL 357309, at *3 (S.D.N.Y. Jan. 9, 2018) ("intentional tort

causes of action asserted against municipal defendants must be commenced within the

one-year-and-90-day statute of limitations contained in General Municipal Law § 50-i."),

*quoting Williams v. City of N.Y.*, 153 A.D.3d 1301, 1305 (2d Dep't 2017); *Lieber v.*

*Village of Spring Valley*, 40 F. Supp.2d 525, 533 (S.D.N.Y. 1999) (collecting cases);

*See also Niles v. City of Oneida*, 6:06-CV-1492, 2009 WL 799971, at *5 (N.D.N.Y. Mar.

25, 2009) (concluding that the statute of limitations provided for in Section 50-i

governed false arrest and assault and battery claims against police officers so long as

jury ultimately found they were acting within the scope and duty of their employment). In

as much as plaintiff's amended complaint clearly alleges that the individual defendants

were, at all times relevant to his complaint, acting "in the course and scope of their

-12-

duties and function as officers, agents, servants, and employees of" the City of North Tonawanda (Dkt. #33, ¶ 7), the Court will apply the one-year and ninety day statute of limitations to all of plaintiff's common law causes of action.

Plaintiff's complaint was filed on August 7, 2020. Dkt. #1. Therefore, any common law claim premised upon factual allegations occurring prior to May 10, 2019 is untimely. However, the most recent factual allegation in plaintiff's amended complaint is that "the third false arrest,[18] falsely and fraudulently alleging Criminal Contempt in the 2nd Degree, . . . was terminated in Plaintiff's favor" on May 7, 2019. Dkt. #33, ¶ 79. Thus, all of plaintiff's common law causes of action[19] are untimely.

Equitable Estoppel

Plaintiff seeks to invoke the doctrine of equitable estoppel to prevent defendants from asserting that plaintiff failed to comply with General Municipal Law § 50-e & § 50-i. Dkt. #42-4, p.7. In support of this argument,

plaintiff affirms that he served a Notice of Claim with respect to the May 12, 2018 incident on the City of North

---

[18] The factual allegations in plaintiff's amended complaint suggest that the district attorney's office pursued additional charges against plaintiff - which plaintiff alleges were dismissed when the district attorney's office was notified that plaintiff had hired an attorney - but do not set forth any facts to suggest that plaintiff was actually arrested a third time. Even if he had been arrested a third time, such arrest would logically have occurred prior to May 7, 2019, which is the date he alleges those charges were terminated in his favor.

[19] Defendants suggest that a state law claim of malicious prosecution against Chief Krantz may be timely, but plaintiff's malicious prosecution claim is only asserted pursuant to 42 U.S.C. § 1983. See Dkt. #33, p.24. In any event, plaintiff's allegation is that defendants initiated an unfounded complaint against plaintiff on or about February 4, 2019 (Dkt. #33, ¶¶ 72-73), and those charges were dismissed on May 7, 2019 (Dkt. #33, ¶79), which is one year and ninety-three days prior to the filing of plaintiff's complaint on August 7, 2020.

> Tonawanda on August 3, 2018 and was subsequently
> informed by defense counsel that my state common law
> claims were not ripe until there was a resolution of the
> charges regarding the May 12, 2018 arrest. Specifically,
> [defense counsel] told me that if I were to file a complaint
> regarding the claims in my Notice of Claim, the court would
> dismiss my claims as premature. [Defense counsel] further
> told me that he had successfully moved to dismiss
> complaints in similar circumstances on the basis that state
> common law claims concerning an alleged false arrest are
> premature until there is a resolution of the charges.

Dkt. #42-1, ¶ 11. Plaintiff also affirms that defense counsel informed him that "none of

your claims are ripe." Dkt. #42-1, ¶ 12.

Based upon defense counsel's representations, plaintiff affirms that he

"served The City of North Tonawanda Defendants a second Notice of Claim on August

4, 2019, within 90 days after all charges against me for the May 12, 2018 incident were

finally dismissed." Dkt. #42-1, ¶ 13. Plaintiff affirms that he "believed that filing a second

Notice of Claim was necessary to commence a lawsuit for the state common law claims

concerning the May 12, 2018 incident." Dkt. #42-1, ¶ 13. Plaintiff argues that

> Defendants wrongfully or negligently engaged in conduct
> that misled Mr. Karcz to justifiably believe that his August 4,
> 2019 Notice of Claim was timely, and lulled him into sleeping
> on his right to petition the court for permission to file a late
> notice of claim.

Dkt. #42-4, p.9.

Defendants reply that plaintiff's allegations of impropriety are meritless

and notes that defendants are not challenging plaintiff's compliance with Notice of

Claim requirements under New York General Municipal Law. Dkt. #46, p.8.

-14-

Equitable estoppel is an "extraordinary remedy" that should be "invoked sparingly and only under exceptional circumstances." *Twersky v. Yeshiva Univ.*, 579 Fed. App'x 7 (2d Cir. 2014), *cert. denied*, 575 U.S. 935 (2015). This is particularly true where the party sought to be estopped is a governmental body. *See, e.g., Coggins v. County of Nassau*, 615 F. Supp.2d 11, 29 n.7 (E.D.N.Y. 2009) (collecting cases disallowing estoppel against governmental subdivisions). Under New York law, equitable estoppel requires a showing of: (1) an act constituting concealment of facts or a false misrepresentation; (2) an intention or expectation that such acts will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoer; and (4) reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment. *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp.2d 682, 714 (S.D.N.Y. 2012).

"Legal opinions or interpretations do not serve as the basis for an application of equitable estoppel." *Clear Channel Outdoor, LLC v. City of New Rochelle*, 2022 WL 17249412, at *5 (S.D.N.Y. Nov. 28, 2022); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp.2d 682, 714 (S.D.N.Y. 2012) (plaintiff's opinions about whether defendants' prior actions constituted a breach were opinions, not facts as required to establish equitable estoppel); *In re Zarro*, 268 B.R. 715, 722 (Bankr. S.D.N.Y. 2001) ("The misrepresentation must be one of fact, and an opinion or misrepresentation of law will not suffice" for application of equitable estoppel under New York law); *Cf. Wood v. Conway*, 2010 WL 11723617, at *4 (S.D.N.Y. May 12, 2010) (Reliance upon incorrect legal advice does not qualify as extraordinary circumstance).

-15-

Given that any statements by defense counsel regarding the "ripeness" of plaintiff's claims against the City amount to an opinion rather than a fact, they cannot support an application of equitable estoppel . Accordingly, it is recommended that plaintiff's common law causes of action be dismissed with prejudice.

## 42 U.S.C. § 1983

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016); *See Burgess v. Banasike*, 6:19-CV-6617, __ F. Supp.3d __, 2022 WL 13740744, at *3 (W.D.N.Y. Oct. 24, 2022) (*respondeat superior* liability is not available in a section 1983 action).

### False Arrest, False Imprisonment & Malicious Prosecution

Defendants seek dismissal of the first three causes of action for false arrest, false imprisonment and malicious prosecution. Dkt. #40-1, pp.15-17.

*January 26, 2017 Arrest*

Plaintiff argues that his January 26, 2017 arrest was not supported by

probable cause because the arrest warrant was based on false allegations and omissions of fact. Dkt. #42-4, pp.10-12. Plaintiff denies that his acceptance of an adjournment in contemplation of dismissal bars his claims with respect to that arrest. Dkt. #42-4, pp.12-13.

Defendants reply that any cause of action relating to plaintiff's January 26, 2017 arrest is untimely. Dkt. #46, p.9.

The statute of limitations for a cause of action pursuant to 42 U.S.C. § 1983 in New York is three years. *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  When the cause of action is premised upon a false arrest, the claim accrues, and the statute begins to run, at the time of the arrest. *Harrison v. New York*, 95 F. Supp.3d 293, 327 (E.D.N.Y. 2015). For a false imprisonment claim, the statute begins to run when the individual is arraigned on charges and becomes subject to legal process. *Mazzone v. Town of Southampton*, 283 F. Supp.3d 38, 56 (E.D.N.Y. 2017). In as much as plaintiff alleges that he was arrested on January 26, 2017 and arraigned on January 27, 2017 - more than three years prior to the filing of his complaint on August 7, 2020 – his claim for false arrest and false imprisonment is barred by the statute of limitations.

For a malicious prosecution claim, the statue begins to run when the criminal proceeding in question terminates in the plaintiff's favor. *Smith v. City of N.Y.*, 1 F. Supp.3d 114, 119 (S.D.N.Y. 2013). Thus, plaintiff's allegation that the charges

relating to this arrest were terminated in his favor on November 14, 2017 - which is within three years of the filing of his complaint on August 7, 2020 - renders his malicious prosecution claim timely.

To state a § 1983 claim for malicious prosecution, plaintiff must plausibly allege a violation of his rights under the Fourth Amendment and the elements of a malicious prosecution claim under state law, *to wit*: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020), *cert. denied*, 142 S.Ct. 1666 (2022). "Under New York law, police officers 'initiate' prosecution by filing charges or other accusatory instruments." *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). A police officer may also be liable for malicious prosecution when he provides false information. *Watkins v. Town of Webster*, 592 F. Supp.3d 96, 113 (W.D.N.Y. 2022).

"To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. __, 142 S. Ct. 1332, 1335 (2022). Because an ACD "is neither a conviction nor an acquittal," it satisfies the favorable termination requirement for the

purposes of a malicious prosecution claim under *Thompson*."[20] *Price v. Peress*, 18-CV-4393, 2022 WL 4638148, at *12 (E.D.N.Y. Sept. 30, 2022).

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello v. City of .N.Y.*, 612 F.3d 149, 161-62 (2d Cir. 2010). Although an arrest authorized by judicial warrant is generally presumed to be supported by probable cause, a plaintiff can rebut this presumption by demonstrating that the affidavits supporting the warrant failed to demonstrate probable cause on their face or that the defendant misled a judicial officer into finding probable cause by knowingly or recklessly including material misstatements in, or omitting material information from, the warrant affidavits. *Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019).

In the instant case, plaintiff alleges that Detective Kuebler and PO Krantz conspired with each other to obtain a warrant for plaintiff's arrest based upon a supporting affidavit from Detective Kuebler containing fictitious allegations. Dkt. #33, ¶¶ 28-32. However, the Court takes judicial notice that plaintiff, represented by counsel,

---

[20] Prior to the Supreme Court's determination in *Thompson*, the Second Circuit required a plaintiff to demonstrate that his criminal prosecution ended not merely without a conviction, but with some affirmative indication of innocence. *See Lanning v. Glens Falls*, 908 F.3d 19, 22 (2018) (dismissing § 1983 malicious prosecution claim for failure to plausibly allege the criminal proceedings against him were terminated in a manner indicating his innocence). Under that standard, it was "well-settled that acceptance of an ACD bars a malicious prosecution claim because it leaves the question of innocence or guilt unanswered and is thus not a termination indicative of innocence." *Smalls v. Collins*, 10 F.4th 117, 143 (2d Cir. 2021); *See Christenson v. Gutman*, 249 A.D.2d 805 (3rd Dep't 1998) (adjournment in contemplation of dismissal with order of protection in satisfaction of charge of harassment, second degree bars recovery for malicious prosecution).

moved the court to dismiss the information for lack of sufficiency and Judge Merino denied that motion (Dkt. #28-7, p.17), thereby establishing probable cause for prosecution. *See* N.Y.C.P.L. § 100.10(1) (information is sufficient when, *inter alia*, the allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause[21] to believe that the defendant committed the offence charged and non-hearsay allegations establish, if true, every element of the offense charged). Accordingly, it is recommended that the malicious prosecution cause of action be dismissed with respect to the criminal proceedings arising from the January 26, 2017 arrest.

> *May 12, 2018 Arrest*

Defendants argue that the first three causes of action for false arrest, false imprisonment and malicious prosecution must be dismissed because plaintiff's complaint recognizes that his May 12, 2018 arrest was based upon probable cause, *to wit*, violation of the order of protection dated November 14, 2017. Dkt. #40-1, pp.15-17.

Plaintiff responds that defendants cannot establish probable cause because there is no proof that the order of protection he was accused of violating was properly entered. Dkt. #42-4, p.14. Plaintiff also argues that the allegations in the supporting deposition are insufficient to satisfy the element of fear of physical injury. Dkt. #42-4, p.14. Finally, plaintiff argues that any reasonable officer would have investigated P.O. Kuebler's claims before arresting plaintiff. Dkt. #42-4, p.15. If

---

[21] The term "reasonable cause" used in CPL 100.40 "means probable cause." *People v. Maldonado*, 86 N.Y.2d 631, 635 (1995).

defendants had investigated P.O. Kuebler's accusations, plaintiff argues that they would have understood that plaintiff was simply stomping on a bee more than 60 feet away from P.O. Kuebler. Dkt. #42-4, p.17.

Defendants argue that plaintiff is conflating the concept of probable cause for an arrest with the government's burden of proof to convict and that the copy of the order of protection and supporting deposition from P.O. Keubler was sufficient to establish probable cause for the arrest and that plaintiff does not plausibly allege that he was arrested on February 4, 2019, but only that new charges were filed against him on that date. Dkt. #46, pp.10-11. Dkt. #46, pp.9-10.

The existence of probable cause to arrest – even for a crime other than the one identified by the arresting officer – will defeat a claim of false arrest under the Fourth Amendment." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016). Because "[f]alse arrest is considered a kind of false imprisonment ... the claims are analyzed in identical fashion." *See Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005), *citing Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996). "The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, except that a claim for malicious prosecution must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest." *Vassiliou v. City of N.Y.*, 18-CV-779, 2021 WL 76916, at *7 (E.D.N.Y. 2021) (internal quotation omitted). So long as there is probable cause to arrest, a claim of malicious prosecution can only proceed if defendants discovered some intervening facts undermining probable cause between

arrest and initiation of prosecution. *Pierce v. City of New York*, 531 F. Supp.3d 620, 626 (E.D.N.Y. 2021).

Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001). Police officers are entitled to rely upon the victims' allegations that a crime has been committed when making a probable cause determination. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). "They are also entitled to rely on the allegations of fellow police officers." *Id.* at 634-35 (Sergeant reasonably relied upon account of police officers claiming to be victims of assault). "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (holding that it was reasonable for police officer to rely upon account of visibly injured individual identifying himself as a law enforcement officer to arrest defendant despite defendant's insistence that law enforcement officer was the aggressor); *See Watkins v. Town of Webster*, 592 F. Supp.3d 96, 116 (W.D.N.Y. 2022) (alleged failure to conduct further investigation or apply all procedures that could have been followed does not amount to fraud, bad faith or the suppression of evidence and is insufficient to overcome the presumption of probable cause).

In the instant case, it was reasonable for PO Krantz to believe that there was probable cause to arrest plaintiff on May 12, 2018. Plaintiff concedes that Detective

Kuebler reported the existence of an order of protection and that plaintiff had called Detective Kuebler a pussy and stomped his foot at plaintiff. Dkt. #33, ¶¶ 38-40. Detective Kuebler reported and subsequently executed a supporting deposition indicating that he had obtained an order of protection against plaintiff and that plaintiff growled and lunged toward him in a threatening manner and also called him derogatory names. Dkt. #8-2& 28-9. In addition, PO Krantz observed plaintiff yell a derogatory name towards Detective Kuebler. Dkt. #28-9. Plaintiff has not alleged any facts that would undermine a finding of probable cause to believe that this conduct was unlawful and the prosecution's inability to produce an admissible copy of the order of protection at trial does not undermine the validity of the order of protection at the time of plaintiff's arrest. Accordingly it is recommended that defendants' motion to dismiss be granted with respect to the false arrest, false imprisonment and malicious prosecution claims relating to plaintiff's arrest and arraignment on May 12, 2018 and subsequent information/complaint dated February 4, 2019. Because plaintiff's cause of action for conspiracy rests upon unsupportable claims of false arrest, false imprisonment and malicious prosecution, it is recommended that this claim be dismissed as well. *See Milton v. McClintic*, 2022 WL 4852825, at *3 (W.D.N.Y. Oct. 4, 2022) (dismissing conspiracy claim[22] where plaintiff failed to adequately claim underlying constitutional violations).

---

[22] Plaintiff's cause of action for conspiracy is insufficient in any event. *See Thompson v. Kline*, 504 F. Supp.3d 200, 211 (W.D.N.Y. 2020) ("complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss"); *Ivery v. Baldauf*, 284 F. Supp.3d 426, 439 (W.D.N.Y. 2018) (To state a conspiracy claim, plaintiff must provide some factual basis supporting a meeting of the minds by providing, *e.g.*, some details of time and place and facts demonstrating an agreement to achieve the unlawful end).

Excessive Force

Defendants argue that the fifth cause of action for excessive force must be dismissed against all defendants except P.O. Burkhart and P.O. Swick as they are the only individuals alleged to have physically touched plaintiff. Dkt. #40-1, pp.17-18. With respect to these arresting officers, defendants argue that body camera footage refutes plaintiff's allegations, warranting dismissal. Dkt. #40-1, pp.18-19.

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Lawson v. County of Suffolk*, 920 F.Supp.2d 332, 339 (E.D.N.Y. 2013). A police officer's use of force is excessive in violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Id.* "The inquiry is necessarily fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). When performing this balancing, the Court is guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest; (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.*

Generally speaking, the amount of force used by the defendant must be more than *de minimis* in order for an excessive force claim to be actionable. *Kaplan v. County of Orange*, 528 F. Supp.3d 141, 170 (S.D.N.Y. 2021); *See Moore v. Keller*, 498

-24-

F. Supp.3d 335, 356 (N.D.N.Y. 2020) ("It is well established that the right to make an arrest accompanies with it the right to use some degree of physical coercion."). While "*de minimis* injuries can serve as evidence that *de minimis* force was used," a plaintiff may recover even if the injuries inflicted were not permanent or severe if the force used was unreasonable and excessive. *Kayo v. Mertz*, 531 F. Supp.3d 774, 798 (S.D.N.Y. 2021). For example, "even where the only physical injuries alleged are bruises, if they are sustained following an unjustified use of force, the claims of excessive use of force will survive." *Jie Yin v. NFTA*, 188 F.Supp.3d 259, 269 (W.D.N.Y. 2016).  As a result, "Fourth Amendment excessive force claims cannot be dismissed solely for failure to establish more than *de minimis* injury." *Rizk v. City of N.Y.*, 462 F. Supp.3d 203, 223 (E.D.N.Y. 2020).

Plaintiff's allegation that PO Burkhart wrenched his surgically repaired right arm behind his back without cause as he placed plaintiff under arrest (Dkt. #33, ¶ 42), is sufficient to state a cause of action for use of excessive force. While the body camera video will likely be an important consideration in assessing the appropriateness of the amount of force used by PO Burkart in effectuating plaintiff's arrest, it is not appropriate for consideration on a motion to dismiss and should be considered in conjunction with other evidence that may be developed during discovery regarding the overall reasonableness of PO Burkhart's actions.

Plaintiff further alleges that PO Swick and PO Burkhart intentionally caused plaintiff physical injury by driving in a manner as to cause wrenching of his right shoulder, arm and back, causing bruising, as well as twisting his previously injured left

foot and ankle without cause. Dkt. #33, ¶ 45. To the extent there is any case law regarding such allegations, however, "establishes that there is no constitutional right to 'non-negligent driving by government employees.'" *Vassiliou* , 2021 WL 76916, at *10, *quoting Carrasquillo v. City of New York*, 324 F. Supp.2d 428, 436 (S.D.N.Y. 2004).

Finally, although plaintiff does not specify which of the defendants allegedly twisted and shoved him into the cell (Dkt. #33, ¶ 47), the Court will permit this allegation to proceed to discovery against the officers involved in his arrest, *to wit*, PO Benjamin, PO Burkhart, PO Mamot and PO Swick.

Deliberate Indifference

Defendants argue that plaintiff has failed to plausibly allege a serious medical need as required to support deliberate indifference or to specify which defendant(s) were personally involved in this alleged constitutional violation. Dkt. #40-1, pp.19-21.

Plaintiff argues that it is sufficient that he alleged that he notified defendants that their unreasonable use of force caused bruising and pain to his surgically repaired right shoulder, for which defendants failed to obtain medical treatment. Dkt. #42-4, p.19.

Defendants reiterate that plaintiff has failed to identify a serious medical need. Dkt. #46, p.12.

An arresting officer may be held liable for his deliberate indifference to an arestee's medical needs in the course of or in the immediate aftermath of an arrest. *Santiago v. City of Rochester*, 481 F. Supp.3d 152, 159 (W.D.N.Y. 2020). "Claims of delayed medical treatment made by a pre-trial detainee are decided under the rubric of the Due Process Clause, though the analysis is essentially identical to a prisoner's Eighth Amendment claim for deliberate indifference." *Molina v. City of Elmira, N.Y.*, 2015 WL 1643280, at *8 (W.D.N.Y. April 13, 2015). "A medical need is serious for constitutional purposes if it presents 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Id., quoting Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Plaintiff's complaint alleges that he made known to the defendants "his very serious and obvious injury to his shoulder," but defendants failed to ensure that plaintiff received immediate attention of a specialist and specialized care in a hospital, resulting in "catastrophic permanent injury." Dkt. #33, ¶¶ 136-141. This is sufficient, at this stage of the proceedings, to state a claim against the arresting officers, *to wit*, PO Benjamin, PO Burkhart, PO Mamot and PO Swick.

<u>Failure to Intervene</u>

Defendants argue that plaintiff's failure to intervene and protect claim must be dismissed if plaintiff's other constitutional claims are dismissed. Dkt. #40-1, p.21.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from

infringement by other law enforcement officers in their presence." *Flannery v. City of Rochester*, __ F. Supp.3d __, 2022 WL 1685660, at *8 (W.D.N.Y. Nov. 10, 2022). To state a claim against an officer for failure to intervene, a plaintiff must allege facts demonstrating that: (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) the officer knew that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene. *Id.* At the motion to dismiss stage, knowledge may be inferred from allegations of close proximity to the alleged constitutional violation as it occurs. *Id.*

Although plaintiff's failure to intervene cause of action fails to identify which defendants failed to intervene in which constitutional violations, the Court recommends that this claim proceed against the arresting officers, *to wit*, PO Benjamin, PO Burkhart, PO Mamot and PO Swick with respect to plaintiff's claims of excessive force and deliberate indifference to serious medical needs.

First Amendment Retaliation

Defendants argue that plaintiff has failed to allege that his behavior changed as a result of defendants' actions as required to plausibly allege a First Amendment retaliation claim and note that plaintiff has commenced multiple civil rights lawsuits subsequent to his arrests. Dkt. #40-1, pp.21-23.

Plaintiff responds that being subjected to criminal charges satisfies the third element. Dkt. #42-4, p.20.

Defendants reiterate that plaintiff cannot overcome his failure to plead the absence of probable cause for his arrest so as to support a retaliation claim. Dkt. #46, p.13.

Plaintiff's First Amendment Retaliation cause of action alleges that he has been subjected to false arrest and prosecution in retaliation for protesting mistreatment by the North Tonawanda Police Department by filing complaints with Internal Affairs, Notices of Claims, and federal lawsuits. Dkt. #33, ¶¶ 145 & 148-154.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). The third element can be satisfied by alleging "*either* that plaintiff's speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.* However, "an individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause, even if that prosecution is in reality an unsuccessful attempt to deter or silence criticism of the government." *Mangino v. Incorporated Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015). In as much as the Court has found plaintiff's arrest and prosecution supported by probable cause, it is recommended that his First Amendment retaliation also be dismissed. *See Norton v. Town of Islip*, 97 F. Supp.3d 241, 257 (E.D.N.Y. 2015) (""Where there is probable cause to arrest a plaintiff or issue a summons, the Court need not make an inquiry into the defendants' motives for doing so.").

-29-

Due Process

Defendants argue that plaintiff cannot sustain a stigma-plus claim because he does not allege that he was employed by the government or that defendants published his arrest as a pending felony, which was a truthful statement in any event. Dkt. #40-1, pp.23-24.

Plaintiff responds that his allegation that defendants caused the details of plaintiff's arrest and prosecution to be published, is sufficient to support "a plausible procedural due process violation based on a stigma-plus theory of liability." Dkt. #42-4, p.21.  Plaintiff also argues that he has asserted a substantive due process claim. Dkt. #42-4, p.22.

Defendants argue that plaintiff has not alleged a substantive due process claim. Dkt. #46, p.13.

Plaintiff generally alleges that defendants' conduct as set forth within the amended complaint "clearly 'shocks the conscience';'interfered with [Plaintiffs'] rights implicit in the concept of ordered liberty'; 'offends judicial notions of fairness'; is 'offensive to human dignity'; and was taken with 'deliberative indifference to [Plaintiff's] protected rights.'" Dkt. #33, ¶ 160 (alterations in original). Plaintiff's due process clause of action alleges that his employment was terminated due to "his 2018 arrest being published as a 'pending felony.'" Dkt. #33, ¶ 163.

The substantive component of the Due Process Clause of the Fourteenth Amendment protects individual liberty against certain government actions regardless of the procedure used to implement them. *Collins v. City of Harker Heights, TX*, 503 U.S. 115, 125 (1992). However, it is well-established that substantive due process protections extend only to those interests that are "implicit in the concept of ordered liberty," and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Smith v. Hogan,* 794 F.3d 249, 255-56 (2d Cir. 2015), *quoting Palko v. Connecticut*, 302 U.S. 319, 325 (1937) *and Reno v. Flores*, 507 U.S. 292, 303 (1993), *cert. denied,* 196 S.Ct. 566 (2016). "Because employment rights are state-created rights and are not 'fundamental rights created by the Constitution, they do not enjoy substantive due process protection." *Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003). Thus, to the extent that plaintiff's complaint alleges that his employment was terminated in violation of his substantive right to due process, it is recommended that this claim be dismissed.

"A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir.2004). In other words, "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Thus, to prevail on a claim of deprivation of a liberty interest in one's reputation without due process of law, *i.e*., a stigma-plus claim, a plaintiff must demonstrate the utterance of a statement sufficiently derogatory to injure plaintiff's reputation, that is capable of being proven

-31-

false and that plaintiff claims is false, and a material state-imposed burden or

state-imposed alteration of the plaintiff's status or rights. *Vega v. Lantz*, 596 F.3d 77, 81

(2d Cir.2010). A negative impact on "job prospects, or, for that matter, romantic

aspirations, friendships, self-esteem, or any other typical consequence of a bad

reputation," is insufficient for purposes of the plus. *Valmonte v. Bane*, 18 F.3d 992,

1001 (2d Cir. 1994); *See Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir.) ("defamation,

even if it leads to a significant loss of employment opportunities, is not a deprivation of

a liberty interest unless it occurs in the course of dismissal or refusal to rehire the

individual as a government employee or during termination or alteration of some other

legal right or status."), *cert denied*, 493 U.S. 816 (1989).


   "The 'stigma-plus' test requires that the defamation be accompanied by an

injury directly caused by the Government, rather than an injury caused by the act of

some third party." *Izzo v. City of Syracuse*, 98–CV–778, 2000 WL 1222014, at *7

(N.D.N.Y. Aug.3, 2000), *aff'd* 11 Fed.Appx. 31 (2001). In other words, "the material

burden or alteration of the plaintiff's status or rights must be state imposed." *Cohane v.*

*National Collegiate Athletic Ass'n*, 04-CV-181, 2014 WL 1279151, at *11 (W.D.N.Y.

2014), *aff'd,* 612 Fed. App'x 41 (2d Cir. 2015); *See Izzo,* 2000 WL 1222014, at *7

(*"*[s]tate action must accompany both prongs of the "'stigma-plus' test."); *Malapanis v.*

*Regan*, 340 F.Supp.2d 184, 193 (D.Ct. 2004) ("Government imposition of a 'tangible

burden' on future employment prospects may satisfy the 'plus' requirement), *aff'd* 147

Fed. Appx. 219 (2d Cir.2005). For example, placement of an individual on a

government registry of child abusers, where potential employers are required not only to

consult, but to justify in writing to the state a decision to hire an individual who appears

on the registry, satisfies the plus requirement because the refusal of employment is based on more than an individual's damaged reputation, but on the added burden an offer of employment would place on employers. *Valmonte*, 18 F.3d at 1001–02. Similarly, in *DiBlasio v. Novello*, the parties conceded that suspension of plaintiff's medical license satisfied the plus requirement. 344 F.3d 292, 295 (2d Cir.2003), *cert. denied*, 541 U.S. 988 (2004).

In the instant case, plaintiff has failed to plausibly allege that the City of North Tonawanda was involved in the decision to terminate plaintiff's employment as would be required to state a stigma-plus cause of action. *See Mathura v. Council for Human Servs. Home Care Servs., Inc*., 107 F.3d 3 (2d Cir.), *quoting Wal-Juice Bar, Inc. v. Elliott*, 899 F.2d 1502, 1507 (6th Cir. 1990) ("Purely private employment . . . creates no property interest to which procedural due process protections apply."), *cert. denied*, 522 U.S. 829 (1997). Accordingly, it is recommended that plaintiff's stigma-plus cause of action be dismissed.

<u>Municipal Liability</u>

Defendants argue that plaintiff has failed to allege any facts to support a governmental custom or policy that caused his constitutional injury. Dkt. #40-1, pp.27-31.

Plaintiff responds that he has plausibly alleged that defendants repeatedly arrested and prosecuted him without probable cause. Dkt. #42-4, p.25.

"A municipality cannot be held liable under Section 1983 unless the
challenged action was undertaken pursuant to a municipal policy, custom, or practice."
*Kistner v. City of Buffalo*, 18-CV-402, 2022 WL 16797986, at *13 (W.D.N.Y. Nov. 8,
2022)*, citing Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To
state such a claim, a plaintiff must plead an official custom or policy that causes the
plaintiff to be subjected to a denial of a constitutional right. *Zahara v. Town of Southold*,
48 F.3d 674, 685 (2d Cir. 1995). Absent an express municipal policy, a plaintiff may
demonstrate that a policymaker acquiesced in a longstanding practice of custom which
constitutes the standard operating procedure of the local governmental entity. *Kistner,*
2022 WL 16797986, at 14; *See Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir.), *cert.
denied*, 531 U.S. 813 (2000). In limited circumstances, a municipality may also be liable
for its failure to train, supervise, or discipline its employees. *Id.; See Wray v. City of
N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (failure to train or supervise employees may be
official policy or custom); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)
("persistent failure to discipline" employees may show a "policy of ratification of
unconstitutional conduct.").

When a plaintiff pursues liability under a theory of failure to train,
supervise, or discipline, plaintiff must also demonstrate that the municipal policymaker
acted with deliberate indifference. *Id.; See Wray*, 490 F.3d at 195 (The failure to train or
supervise city employees may constitute an official policy or custom if the failure
amounts to deliberate indifference to the rights of those with whom the city employees
interact.). More specifically, a § 1983 plaintiff injured by a police officer may establish
the pertinent custom or policy by showing that the municipality, alerted to the possible

-34-

use of excessive force by its police officers, exhibited deliberate indifference. *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). To establish deliberate indifference, a plaintiff must show that: (1) a policymaker knows to a moral certainty that city employees will confront a particular situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Kistner,* 2022 WL 16797986, *at 14.; See Wray*, 490 F.3d at 195-196.

Deliberate indifference may also be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to the plaintiff. *Id.; See Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012). Generally speaking, a pattern of similar constitutional violations by untrained employees will be necessary to demonstrate deliberate indifference based upon a failure to train. *Id.; See Connick v. Thompson*, 563 U.S. 51, 62 (2011). The failure to discipline a single police officer for a single incident of illegality is insufficient to establish a policy of acquiescing in or ratifying illegal conduct. *Id.; See Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020).

Because *Monell* claims are derivative of claims against individual defendants, a claim for municipal liability cannot survive absent an underlying constitutional violation. *See  Morgan v. County of Warren*, 2022 WL 195065, at *6

(N.D.N.Y. Jan. 21, 2022),  *citing Pinter v. City of New York*, 448 Fed. App'x 99, 106 (2d Cir. 2011). Here, plaintiff has failed to plausibly allege that City of North Tonawanda officials were deliberately indifferent to complaints of excessive use of force or deliberate indifference to serious medical needs by its police officers. Plaintiff's conclusory allegations of "policies, practices, customs and usages of encouraging and/or tacitly sanctioning . . . excessive force against persons engaged in constitutionally protected activity" and "consciously disregard[ing] the illegality and unconstitutionality of said . . . use of force" as "evidenced by the countless repeated occurrences of similar wrongful conduct against the Plaintiffs as documented by violations of the Plaintiffs rights in the City since May 24, 2013," and documented in the filing of "three other lawsuits" is too vague as to support municipal liability, even at this early stage of the litigation. *See, e.g., Lopez v. City of N.Y.*, 20-CV-2502, 2022 WL 2078194, at *10 (S.D.N.Y. June 9, 2022) (dismissing *Monell* claim for, *inter alia*, failure to plead any facts that could give rise to an inference that the City took no action in response to any complaints); *Tierman v. City of Newburgh*, 13-CV-4178, 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015) (dismissing *Monell* claim for, *inter alia*, the absence of "any allegations plausibly establishing that the City failed to investigate the listed complaints of excessive force.").

### Punitive Damages

Defendants argue that any claim for punitive damages against the City or its municipal employees acting in their official capacity must be dismissed. Dkt. #40-1, p.31.

Plaintiff responds that his request for punitive damages is appropriate because he has plausibly alleged liability against the defendants in their individual capacities.

Defendants reiterate that because moving defendants are alleged to have been acting within the scope of their official duties, the City would be required to indemnify any damages awarded. Dkt. #46, p.14.

"Although punitive damages are not available against municipalities or against individuals sued in their official capacities, punitive damages may be awarded against defendants sued in their individual capacities." *Gustafson v. Village of Fairport*, 106 F. Supp.3d 340, 355 (W.D.N.Y. 2015). Accordingly, it is recommended that this aspect of defendants' motion to dismiss be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that: (1) defendants' motion to dismiss (Dkt. #40), be granted as to Lt. Iwanicki, PO Bolslover, PO Krantz, the City of North Tonawanda Police Department, the City of North Tonawanda, and all defendants in their official capacities; (2) defendants' motion to dismiss (Dkt. #40), be denied with respect to plaintiff's § 1983 claims asserting use of excessive force, deliberate indifference to serious medical needs, and failure to intervene against PO Benjamin, PO Burkhart, PO Mamot, and PO Swick, in their individual capacities; and (3) that plaintiff's motion to strike (Dkt. #42), be granted in part and denied in part.

-37-

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to

comply with the provisions of Rule 72(b) may result in the District Judge's refusal to
consider the objection.

The Clerk is hereby directed to send a copy of this Report,
Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:       Buffalo, New York
             March 7, 2023

 **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**